UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

RUBEN OCASIO,                                            :

               Petitioner,                      :            07 Civ.  2754 (BSJ) (AJP)

        -against-                                    :            **REPORT AND RECOMMENDATION**

J. T. SMITH, Superintendent,                            :
Shawangunk Correctional Facility,
                                                        :
              Respondent.                     :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**ANDREW J. PECK, United States Magistrate Judge:**

**To the Honorable Barbara S. Jones, United States District Judge:**

           Pro se petitioner Ruben Ocasio seeks a writ of habeas corpus from his August 8, 2003 conviction, upon a guilty plea, in Supreme Court, New York County, of first degree attempted burglary and first degree sexual abuse, and concurrent sentences as a persistent violent offender of eighteen years to life imprisonment and twelve years to life imprisonment, respectively.  (Dkt. No. 1: Pet. Att.: Ocasio 1st Dep't Br. at 1-2; Dkt. No. 5: State Br. at 1.)  Ocasio's habeas corpus petition asserts that:  (1) Ocasio's "decision to plead guilty was not knowingly or voluntarily made where he was threatened by the court and [the] prosecutor, acting jointly, with multiple consecutive sentences if he did not withdraw his challenge to his prior felony statement" (Ocasio 1st Dep't Br. at 10-15); (2) "[t]he lower court impermissibly failed to advise [Ocasio] that he had a right to a hearing, if he

H:\OPIN\OCASIO-Ruben

made a sufficient showing, that the convictions which would make him a predicate violent felon were not constitutionally obtained" (Ocasio 1st Dep't Br. at 16-23).

For the reasons set forth below, Ocasio's habeas petition should be <u>DENIED</u>.

## FACTS

Ruben Ocasio's conviction arose from the August 7, 2002 robbery and sexual assault of a woman in the stairwell of her apartment building.  (Dkt. No. 1: Pet. Att.: Ocasio 1st Dep't Br. at 2; Dkt. No. 5: State Br. at 2.)  Ocasio allegedly "punched complainant several times in the face, . . . pulled up her dress, placed his hand on her butto[c]ks, pulled off her underwear, and got on top of her." (State Br. at 2; <u>see</u> Ocasio 1st Dep't Br. at 2.)  The police later arrested Ocasio and found the complainant's palm pilot and credit card in his backpack.  (State Br. at 2.)  Ocasio allegedly struggled with the arresting officer and refused to be handcuffed.  (State Br. at 2.)

The grand jury charged Ocasio with first degree burglary, first  and second degree robbery, first degree sexual abuse, first degree attempted sexual abuse, second degree assault, fifth degree criminal possession of stolen property and resisting arrest.  (State Br. at 2.)

**March 26, 2003 Plea Proceedings**

Ocasio and his attorney, Candace Kurtz of the Legal Aid Society, appeared on March 26, 2003 before Justice James Yates for "hearing and trial," with witnesses "on alert" for an afternoon hearing.  (Dkt. No 6: 3/26/03 Plea Tr. at 1-2.)  Justice Yates stated that the People previously had offered "a plea to the charge which would carry a minimum of twenty to life" but now were offering to allow Ocasio to plead to a lesser included offense with a sentence of eighteen years

to life.  (3/26/03 Plea Tr. at 2.)  Justice Yates put the case on for "second call" to allow Ocasio and Ms. Kurtz to discuss the People's offer in advance of any hearing, when the offer would no longer be available.  (3/26/03 Plea Tr. at 2.)

When the case was re-called, Ocasio pleaded guilty to first degree attempted burglary, a class C violent felony offense, and first degree sexual abuse, a class D felony.  (3/26/03 Plea Tr. at 3, 6.)  Ocasio indicated that he was satisfied with Ms. Kurtz's representation, that he understood he was giving up his right to a jury trial in which the prosecutor "would have to prove [his] guilt beyond a reasonable doubt to the unanimous satisfaction of twelve jurors" and where he could call his own witnesses, cross-examine the prosecution's witnesses and choose to testify or remain silent.  (3/26/03 Plea Tr. at 3-4, 6.)

Justice Yates stated that under the plea agreement, he would sentence Ocasio "as a persistent violent felony offender to eighteen years to life imprisonment."  (3/26/03 Plea Tr. at 4, 6-7.)  Ocasio answered  "yes" when asked if this plea had been explained to him, and "no" when asked if he had been threatened or if other promises had been made in order to induce a guilty plea.  (3/26/03 Plea Tr. at 4-7.)  Justice Yates read the facts of the case contained in the indictment and Ocasio admitted that all of those facts were true.  (3/26/03 Plea Tr. at 7-8.)

Justice Yates stated that the "People have filed and served a persistent violent felony statement" alleging that Ocasio was twice convicted of second degree attempted robbery in 1989 and 1994, and once of first degree  robbery in 1990, all in Supreme Court, Kings County.  (3/26/03 Plea

4

Tr. at 9.) Justice Yates noted that all three convictions were obtained within ten years of the current crime, excluding any time spent in prison. (3/26/03 Plea Tr. at 9-10.) Justice Yates advised Ocasio:

> You have a right to challenge that statement. You can challenge the statement on the grounds that it is not completely true.
>
> You can also challenge it on the grounds that any one or more of those convictions were illegally obtained.
>
> You can also challenge it on the grounds that the calculation of the incarceration periods is not correct. Do you wish to challenge the statement?

(3/26/03 Plea Tr. at 10.) Ocasio stated that he did not wish to challenge the persistent violent felony statement, and Justice Yates found Ocasio to be a persistent violent felony offender. (3/26/03 Plea Tr. at 10.)

## May 30, 2003 Proceeding

On May 30, 2003, Ocasio appeared before Justice Yates with Legal Aid attorney Robert Bigelo, standing in for Ocasio's attorney of record, Candace Kurtz. (Dkt. No. 6: 5/30/03 Tr. at 1-2.) Ocasio stated he was "very sorry to the victim" and that he "took this plea for fear of getting more prison time if [he] were to go to trial." (5/30/03 Tr. at 2.) When Justice Yates asked Ocasio if he was claiming innocence, Ocasio replied: "No, I never said that." (5/30/03 Tr. at 2-3.)

Ocasio contested the validity of using his 1994 conviction as a predicate for his adjudication as a persistent violent felony offender. (5/30/03 Tr. at 3-4.) Specifically, Ocasio claimed that the 1994 conviction was obtained in violation of his "right to due process" and C.P.L. § 400.15 because "[t]he Kings County Court did not order a second felony hearing," never asked Ocasio if he wanted to contest his pre-1994 convictions and did not advise him of his right to do so.

(5/30/03 Tr. at 3-4.) Ocasio asked Justice Yates "in the interests of justice to postpone the sentence and look into this matter." (5/30/03 Tr. at 4.)

Mr. Bigelo asked for an adjournment so that Ms. Kurtz could be present for sentencing. (5/30/03 Tr. at 4.) Justice Yates agreed to the adjournment to "figure out whether or not [Ocasio] was advised of his constitutional rights when he plead guilty in Brooklyn," but noted that Ocasio had been adjudicated a persistent violent offender during the March 26, 2003 guilty plea proceeding. (5/30/03 Tr. at 4-5.)

As Justice Yates was about to adjourn, Mr. Bigelo informed him that Ocasio wished "to be sentenced today," that Ocasio was "satisfied with Ms. Kurtz' representation" and was "not trying to get his plea back." (5/30/03 Tr. at 5.) The following exchange ensued:

> THE COURT: So, Mr. Ocasio just so I have it straight, you want me to sentence you as a persistent violent felony offender to 18 to life and 12 to life concurrent and you're withdrawing any challenge you might otherwise have made regarding the legality of your prior convictions; is that all true.
>
> THE DEFENDANT [Ocasio]: Your Honor, I am not saying I want to waive any calling to my prior offense. I just want to be afforded an opportunity due to the fact I am going to be serving a lot of time at least in the interests of justice to look into this. That is all I am asking. I am not saying I want to take the conviction back.
>
> THE COURT: I am not going to sentence you as a persistent violent offender if you're not a persistent violent felony offen[der]. And I am not going to sentence you and then have you raise it later on appeal without me having heard your argument. That means we have to adjourn it. June 13th.

(5/30/03 Tr. at 5-6.)

**June 13, 2003 Proceeding**

On June 13, 2003, Justice Yates asked whether Ms. Kurtz had discovered "any reason to undo the previous admission" that Ocasio was a persistent violent felony offender.  (Dkt. No. 6: 6/13/03 Tr. at 2.)  Ms. Kurtz replied that she had ordered the minutes from the previous convictions. (6/13/03 Tr. at 2.)  After an off-the-record conversation, the following exchange occurred:

> THE COURT:  Maybe this would be a good case to try.  He faces 25 to life. He has three predicate violents and he is charged with a robbery in the first degree; the sentences could run consecutive.

> MS. KURTZ:  I believe that the sentences could run consecutive.  There's a rob 1 and attempted rape.  It would be between twenty and twenty five to life if nothing is run consecutive.

> THE COURT:  And I promised him only 18.  Maybe we should go to trial.

(6/13/03 Tr. at 2-3.)  The prosecutor argued that Ocasio's status as a persistent violent felony offender had "already been resolved" at the time of Ocasio's guilty plea.  (6/13/03 Tr. at 3.)  Justice Yates replied that he understood the prosecutor's position, but inquired whether the complainant was "available if we want to do the trial."  (6/13/03 Tr. at 3.)  Ms. Kurtz, after approaching the bench, stated that she thought that Justice Yates intended to sentence Ocasio "today."  (6/13/03 Tr. at 3.) Justice Yates replied that he first wanted to determine whether there was any basis for Ocasio's motion concerning his 1994 adjudication as a persistent violent felony offender.  (6/13/03 Tr. at 3.)

Ocasio told Justice Yates:

> I would like to say I heard the district attorney speak about that.  I had a chance to contest my previous -- and what about my persistent hearing, how could I do that when I have no knowledge, I have no knowledge of rights to any procedure. I am lame to the law.  By me going to the law libraries and studying I have come

across some law which actually, helps me out. I am facing a lot of time here. I am not trying to – how can I say it, in other words, try to beat the system, no all I am trying to do because I know in 1994, what happened in this Court the last time I was here was not done to me and that violated my constitutional rights.

Now I had no prior knowledge of that. How can I challenge something and waive it when I have no knowledge of it. By reading it says that, not you per se because you did not do this. This was in 1994. It must be intentional relinquishment [or] abandonment. I had no knowledge of that.

(6/13/03 Tr. at 4.)

Justice Yates stated that he was "not sure" what Ocasio was "complaining about" and sought to clarify whether Ocasio had a "problem" with his 1994 conviction. Ocasio replied, "Yes," and added:

I was never advised of my constitutional rights about taking the [1994] plea. I was never told by my attorney I could challenge any of the allegations. I was just offered a plea of four to eight and told that I was not going to trial by taking the plea and that was all that happened upon having the persistent hearing I don't know if it was hearing or a statement being read. I didn't know what was going on I didn't know I could challenge it. My lawyer didn't let me know that. If that would have been the issue I would have brought a case up then. It wasn't because I didn't want to. I didn't know.

(6/13/03 Tr. at 4-5.)

Justice Yates noted that Ocasio technically had waived his right to challenge his previous convictions at the time of his March 26, 2003 guilty plea, but Justice Yates decided to postpone decision to give him time to read the minutes of Ocasio's 1994 plea to determine whether Ocasio's objections had any merit. (6/13/03 Tr. at 5-6.)

**The October 9, 1994 Plea Minutes**

On October 9, 1994, Ocasio (and counsel) appeared before Justice Gerald Beldock in Supreme Court, Kings County, and pleaded guilty to first degree attempted armed robbery, a Class C felony, in exchange for a promised sentence of four to eight years. (Dkt. No. 7: 10/9/94 Plea Tr. at 3.)

Ocasio answered affirmatively when Justice Beldock asked whether Ocasio wished to plead guilty, whether he had "discussed it carefully" with his attorney and whether he was satisfied that it was in his best interest to plead guilty. (10/9/94 Plea Tr. at 5.) Ocasio stated that he understood the rights he was giving up by pleading guilty, that he had not been threatened or coerced, and that he was voluntarily pleading guilty because he was "in fact guilty." (10/9/94 Plea Tr. at 5-6.) Ocasio admitted that all of the facts contained in the indictment were true. (10/9/94 Plea Tr. at 8.)

The prosecutor handed Ocasio's counsel a "predicate felon statement." (10/9/94 Plea Tr. at 9.) After agreeing to waive his right to appeal the sentence (10/9/94 Plea Tr. at 9-10), the following exchange occurred concerning the persistent violent felony statement:

> THE CLERK: Mr. Ocasio, you have been provided with a statement by the district attorney according to Section 400.15 of the Criminal Procedure Law which states that you have been convicted and sentenced on a prior felony. You may admit or deny or stand mute as to whether you are the person who was convicted and sentenced on the felony as recited in the statement, that is to robbery in the first degree in Kings county to indictment number 1994 of 1989, date of sentence was April 23, 1990, also to attempted robbery in the second degree in Kings county to indictment number 6047 of '89 and the date of the sentence was May 31, of 1989.
>
> If you wish to deny the charges in that statement or claim a violation of your Constitutional rights, you must state the grounds and you are entitled to a hearing before this Court without a jury.

H:\OPIN\OCASIO-Ruben

Now, Mr. Ocasio, have you received a copy of the statement?

THE DEFENDANT [Ocasio]:  Yes.

THE CLERK:  Have you discussed this matter with your attorney?

THE DEFENDANT:  Yes.

THE CLERK:  Do you now admit the prior convictions and sentences?

THE DEFENDANT:  No, I don't admit them -- sorry, yes, yes.

THE CLERK:  <u>Do you now admit the prior convictions and sentences</u>?

THE DEFENDANT:  <u>Yes</u>.

THE CLERK:  Judge.

THE COURT:  <u>The Court finds defendant to be a predicate violent felon and persistent</u>.

(10/9/94 Plea Tr. at 10-11, emphasis added.)

**<u>August 8, 2003 Sentencing Proceeding</u>**

At the August 8, 2003 sentencing hearing, Justice Yates recounted what had occurred at the previous hearings and noted Ocasio's challenge to his 1994 conviction on the grounds that he was improperly arraigned as a persistent violent felon.  (Dkt. No. 6: 8/8/03 Sentencing Tr. ["8/8/03 S."] at 2-3.)  Justice Yates stated that he had read the minutes from Ocasio's 1994 plea and concluded that:

It seems to me that Judge Beldock properly arraigned you on that occasion. He adjudicated you to be a predicate felon and it seems to me that you admitted it in open court.  I know that as part of that he asked you in particular whether you admitted or whether you wanted to challenge the statement.  I know that he didn't in

particular directly ask you . . . if you felt that the previous convictions had been illegally obtained, but I don't believe there is any requirement that he had to do that.

My review of the arraigning process and that predicate statement by Judge Beldock is such that I don't think I am authorized to, nor would if I were authorized to, find there was any legal basis for finding you were not previously adjudicated correctly by Judge Beldock to be a predicate felon.

Given all that, I don't see why I should now set aside the previous admission and determination that you are a persistent violent felony offender in this case.

(8/8/03 S. at 3-4.)

Ocasio again objected that his 1994 conviction was obtained in violation of his constitutional rights.  (8/8/03 S. at 5.)  Ocasio argued that Justice Beldock did not ask him whether he understood what he was waiving when he was arraigned on the predicate violent offender statement, rendering  his plea invalid under the Due Process Clause.  (8/8/03 S. at 5-6.)  Ocasio admitted "that no statute requires the Court to tell" him that not challenging the prior convictions "will be deemed a waiver," but argued that "the U.S. Constitution under due process does."  (8/8/03 S. at 6.)  Ocasio stated further that no waiver can be "presumed from a silent record."  (8/8/03 S. at 6.)  Ocasio said that he would appeal.  (8/8/03 S. at 7.)

Justice Yates sentenced Ocasio "as promised [to] 18 years to life imprisonment on the attempted burglary count and 12 years to life imprisonment on the sex abuse count."  (8/8/03 S. at 7.)  Justice Yates denied Ocasio's "motion to vacate the previous determination that [Ocasio] is a persistent violent felony offender."  (8/8/03 S. at 7.)

**Ocasio's Direct Appeal**

Represented by new counsel, Ocasio appealed to the First Department, claiming that:

(1) Ocasio's "decision to plead guilty was not knowingly or voluntarily made where he was threatened by the court and [the] prosecutor, acting jointly, with multiple consecutive sentences if he did not withdraw his challenge to his prior felony statement" (Dkt. No. 1: Pet. Att.: Ocasio 1st Dep't Br. at 10-15); (2) "[t]he lower court impermissibly failed to advise [Ocasio] that he had a right to a hearing, if he made a sufficient showing, that the convictions which would make him a predicate violent felon were not constitutionally obtained" (Ocasio 1st Dep't Br. at 16-23).

On November 1, 2005, the First Department unanimously affirmed Ocasio's conviction and sentence, holding in full:

> The court properly adjudicated defendant a persistent violent felony offender. The court fully advised defendant of his right to challenge predicate convictions on constitutional grounds, and it correctly found that there was nothing defective about defendant's 1994 conviction. Defendant's remaining contentions are unpreserved and we decline to reach them in the interest of justice. Were we to reach these claims, we would find them to be without merit. We add only that even if the court has belabored the obvious (that defendant faced consecutive sentences of up to 25 years to life if convicted after trial) before rather than after defendant pleaded guilty, defendant's claim that the court coerced the plea would be meritless just the same.

People v. Ocasio, 23 A.D.3d 176, 176, 802 N.Y.S.2d 621, 621-22 (1st Dep't 2005) (citations omitted).

On April 28, 2006, the New York Court of Appeals denied leave to appeal.  People v. Ocasio, 6 N.Y.3d 851, 816 N.Y.S.2d 757 (2006).

**Ocasio's Federal Habeas Corpus Petition**

Ocasio's February 13, 2007 pro se habeas corpus petition asserts the same claims he had raised before the First Department, i.e., that: (1) Ocasio's "decision to plead guilty was not knowingly or voluntarily made where he was threatened by the court and [the] prosecutor, acting jointly, with multiple consecutive sentences if he did not withdraw his challenge to his prior felony statement" (Dkt. No. 1: Pet. Att.: Ocasio 1st Dep't Br. at 10-15); (2) "[t]he lower court impermissibly failed to advise [Ocasio] that he had a right to a hearing, if he made a sufficient showing, that the convictions which would make him a predicate violent felon were not constitutionally obtained" (Ocasio 1st Dep't Br. at 16-23).

## ANALYSIS

## I.   THE AEDPA REVIEW STANDARD[1]

---

[1]   For additional decisions by this Judge discussing the AEDPA review standard in language substantially similar to that in this entire section of this Report & Recommendation, see, e.g., Rivera v. Ercole, 07 Civ. 3577, 2007 WL 2706274 at *7-10 (S.D.N.Y. Sept. 18, 2007) (citing my prior decisions); Morales v. Artus, 05 Civ. 3542, 2006 WL 3821488 at *13-16 (S.D.N.Y. Dec. 28, 2006) (Peck, M.J.) (citing my prior decisions); Bryant v. Fischer, 05 Civ. 0437, 2005 WL 3418282 at *10-14 (S.D.N.Y. Dec. 14, 2005) (Peck, M.J.); Olivo v. Thorton, 05 Civ. 3237, 2005 WL 3292542 at *5-8 (S.D.N.Y. Dec. 6, 2005) (Peck, M.J.) (citing my prior decisions), report & rec. adopted, 2006 WL 1636742 (S.D.N.Y. June 12, 2006) & 2006 WL 2689889 (S.D.N.Y. Sept. 19, 2006); Boyd v. Smith, 03 Civ. 5401, 2004 WL 2915243 at *5-7 (S.D.N.Y. Dec. 17, 2004) (Peck, M.J.) (citing my prior decisions); Montalvo v. Annetts, 02 Civ. 1056, 2003 WL 22962504 at *12-14 (S.D.N.Y. Dec. 17, 2003) (Peck, M.J.) (citing my prior decisions); Larrea v. Bennett, 01 Civ. 5813, 2002 WL 1173564 at *14 (S.D.N.Y. May 31, 2002) (Peck, M.J.), report & rec. adopted, 2002 WL 1808211 (S.D.N.Y. Aug. 6, 2002), aff'd, 368 F.3d 179 (2d Cir. 2004); Mendez v. Artuz, 98 Civ. 2652, 2000 WL 722613 at *22 (S.D.N.Y. June 6, 2000) (Peck, M.J.), report & rec. adopted, 2000 WL 1154320 (S.D.N.Y. Aug. 14, 2000), aff'd, 303 F.3d 411, 417 (2d Cir. 2002), cert. denied, 537 U.S. 1245, 123 S. Ct. 1353 (2003); Fluellen v. Walker, 97 Civ. 3189, 2000 WL 684275 at *10 (S.D.N.Y.
(continued...)

13

Before the Court can determine whether petitioner is entitled to federal habeas relief, the Court must address the proper habeas corpus review standard under the Antiterrorism and Effective Death Penalty Act ("AEDPA").

In enacting the AEDPA, Congress significantly "modifie[d] the role of federal habeas courts in reviewing petitions filed by state prisoners." <u>Williams</u> v. <u>Taylor</u>, 529 U.S. 362, 403, 120 S. Ct. 1495, 1518 (2000). The AEDPA imposed a more stringent review standard, as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) . . . was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).[2]

---

[1]     (...continued)
May 25, 2000) (Peck, M.J.), <u>aff'd</u>, 41 Fed. Appx. 497 (2d Cir. 2002), <u>cert. denied</u>, 538 U.S. 978, 123 S. Ct. 1787 (2003).

[2]     <u>See also</u>, <u>e.g.</u>, <u>Henry</u> v. <u>Poole</u>, 409 F.3d 48, 67 (2d Cir. 2005), <u>cert. denied</u>, 547 U.S. 1040, 126 S. Ct. 1622 (2006); <u>Howard</u> v. <u>Walker</u>, 406 F.3d 114, 121-22 (2d Cir. 2005); <u>Cox</u> v. <u>Donnelly</u>, 387 F.3d 193, 197 (2d Cir. 2004); <u>Dallio</u> v. <u>Spitzer</u>, 343 F.3d 553, 559-60 (2d Cir. 2003), <u>cert. denied</u>, 541 U.S. 961, 124 S. Ct. 1713 (2004); <u>Eze</u> v. <u>Senkowski</u>, 321 F.3d 110, 120 (2d Cir. 2003) ("AEDPA changed the landscape of federal habeas corpus review by 'significantly curtail[ing] the power of federal courts to grant the habeas petitions of state prisoners.'") (quoting <u>Lainfiesta</u> v. <u>Artuz</u>, 253 F.3d 151, 155 (2d Cir. 2001), <u>cert. denied</u>, 535 U.S. 1019, 122 S. Ct. 1611 (2002)).

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have "independent meaning." Williams v. Taylor, 529 U.S. at 404-05, 120 S. Ct. at 1519.[3/]  Both, however, "restrict[] the source of clearly established law to [the Supreme] Court's jurisprudence." Williams v. Taylor, 529 U.S. at 412, 120 S. Ct. at 1523.[4/]  "That federal law, as defined by the Supreme Court, may be either a generalized standard enunciated in the [Supreme] Court's case law or a bright-line rule designed to effectuate such a standard in a particular context." Kennaugh v.

---

[3/]    Accord, e.g., Henry v. Poole, 409 F.3d at 68; Howard v. Walker, 406 F.3d at 122; Parsad v. Greiner, 337 F.3d 175, 181 (2d Cir.), cert. denied, 540 U.S. 1091, 124 S. Ct. 962 (2003); Jones v. Stinson, 229 F.3d 112, 119 (2d Cir. 2000); Lurie v. Wittner, 228 F.3d 113, 125 (2d Cir. 2000), cert. denied, 532 U.S. 943, 121 S. Ct. 1404 (2001); Clark v. Stinson, 214 F.3d 315, 320 (2d Cir. 2000), cert. denied, 531 U.S. 1116, 121 S. Ct. 865 (2001).

[4/]    Accord, e.g., Carey v. Musladin, 127 S. Ct. 649, 654 (2006) ("Given the lack of holdings from the Court regarding this [issue], it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"); Yarborough v. Alvarado, 541 U.S. 652, 659, 124 S. Ct. 2140, 2147 (2004) ("We look for 'the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision.'"); Wiggins v. Smith, 539 U.S. 510, 519, 123 S. Ct. 2527, 2534 (2003); Lockyer v. Andrade, 538 U.S. 63, 72, 123 S. Ct. 1166, 1172 (2003) ("Section 2254(d)(1)'s 'clearly established' phrase 'refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision.'"); Rodriguez v. Miller, 499 F.3d 136, 140, (2d Cir. 2007) ("'Clearly established federal law' refers only to the holdings of the Supreme Court.  No principle of constitutional law grounded solely in the holdings of the various courts of appeals or even in the dicta of the Supreme Court can provide the basis for habeas relief. Leading by example, Musladin admonishes courts to read the Supreme Court's holdings narrowly and to disregard as dicta for habeas purposes much of the underlying logic and rationale of the high court's decisions.") (citations & fn. omitted); Howard v. Walker, 406 F.3d at 122; Tueros v. Greiner, 343 F.3d 587, 591 (2d Cir. 2003), cert. denied, 541 U.S. 1047, 124 S. Ct. 2171 (2004); Parsad v. Greiner, 337 F.3d at 181; DelValle v. Armstrong, 306 F.3d 1197, 1200 (2d Cir. 2002); Yung v. Walker, 341 F.3d 104, 109-110 (2d Cir. 2003); Kennaugh v. Miller, 289 F.3d 36, 42 (2d Cir.), cert. denied, 537 U.S. 909, 123 S. Ct. 251 (2002); Loliscio v. Goord, 263 F.3d 178, 184 (2d Cir. 2001); Sellan v. Kuhlman, 261 F.3d 303, 309 (2d Cir. 2001).

Miller, 289 F.3d at 42. "A petitioner can not win habeas relief solely by demonstrating that the state court unreasonably applied Second Circuit precedent." Yung v. Walker, 341 F.3d at 110; accord, e.g., Rodriguez v. Miller, 2007 WL 2445120 at *3, 5-6; DelValle v. Armstrong, 306 F.3d at 1200.

> As to the "contrary to" clause:

> A state-court decision will certainly be contrary to [Supreme Court] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases. . . . A state-court decision will also be contrary to [the Supreme] Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.

Williams v. Taylor, 529 U.S. at 405-06, 120 S. Ct. at 1519-20.[5/]

> In Williams, the Supreme Court explained that "[u]nder the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams v. Taylor, 529 U.S. at 413, 120 S. Ct. at 1523.[6/] However,

---

[5/]     Accord, e.g., Brown v. Payton, 544 U.S. 133, 125 S. Ct. 1432, 1438-39 (2005); Bell v. Cone, 543 U.S. 447, 452-53, 125 S. Ct. 847, 851 (2005); Price v. Vincent, 538 U.S. 634, 640, 123 S. Ct. 1848, 1853 (2003); Lockyer v. Andrade, 123 S. Ct. at 1173-74; Hawkins v. Costello, 460 F.3d 238, 242 (2d Cir. 2006), cert. denied, 127 S. Ct. 1267 (2007); Henry v. Poole, 409 F.3d at 68; Howard v. Walker, 406 F.3d at 122; Rosa v. McCray, 396 F.3d 210, 219 (2d Cir.), cert. denied, 546 U.S. 889, 126 S. Ct. 215 (2005); Tueros v. Greiner, 343 F.3d at 591; DelValle v. Armstrong, 306 F.3d at 1200; Yung v. Walker, 341 F.3d at 109; Kennaugh v. Miller, 289 F.3d at 42; Loliscio v. Goord, 263 F.3d at 184; Lurie v. Wittner, 228 F.3d at 127-28.

[6/]     Accord, e.g., Brown v. Payton, 544 U.S. at 141, 125 S. Ct. at 1439; Wiggins v. Smith, 539 U.S. at 520, 123 S. Ct. at 2534-35; Lynn v. Bliden, 443 F.3d 238, 246 (2d Cir. 2006), cert. (continued...)

"[t]he term 'unreasonable' is . . . difficult to define." Williams v. Taylor, 529 U.S. at 410, 120 S. Ct. at 1522. The Supreme Court made clear that "an unreasonable application of federal law is different from an incorrect application of federal law." Id.[7] Rather, the issue is "whether the state court's application of clearly established federal law was objectively unreasonable." Williams v. Taylor, 529 U.S. at 409, 120 S. Ct. at 1521.[8] "Objectively unreasonable" is different from "clear error." Lockyer v. Andrade, 538 U.S. at 75, 123 S. Ct. at 1175 ("The gloss of clear error fails to give proper

---

[6]    (...continued)
denied, 127 S. Ct. 1383 (2007); Howard v. Walker, 406 F.3d at 122; Parsad v. Greiner, 337 F.3d at 181.

[7]    See also, e.g., Yarborough v. Alvarado, 541 U.S. at 664, 124 S. Ct. at 2150; Wiggins v. Smith, 539 U.S. at 520, 123 S. Ct. at 2535; Price v. Vincent, 538 U.S. at 641, 123 S. Ct. at 1853 ("As we have explained:  '[A] federal habeas court may not issue the writ simply because that court concludes that the state-court decision applied [a Supreme Court case] incorrectly.'") (quoting Woodford v. Visciotti, 537 U.S. 19, 24-25, 123 S. Ct. 357, 360 (2002)); Lockyer v. Andrade, 538 U.S. at 75, 123 S. Ct. at 1175; Hawkins v. Costello, 460 F.3d at 243; Lynn v. Bliden, 443 F.3d at 246; Henry v. Poole, 409 F.3d at 68; Howard v. Walker, 406 F.3d at 122; Rosa v. McCray, 396 F.3d at 219; Cox v. Donnelly, 387 F.3d at 197; Eze v. Senkowski, 321 F.3d at 124-25; DelValle v. Armstrong, 306 F.3d at 1200 ("With regard to issues of law, therefore, if the state court's decision was not an unreasonable application of, or contrary to, clearly established federal law as defined by Section 2254(d), we may not grant habeas relief even if in our judgment its application was erroneous.").

[8]    Accord, e.g., Yarborough v. Alvarado, 541 U.S. at 664, 124 S. Ct. at 2150; Wiggins v. Smith, 539 U.S. at 520-21, 123 S. Ct. at 2535; Price v. Vincent, 538 U.S. at 641, 123 S. Ct. at 1853; Lockyer v. Andrade, 538 U.S. at 75, 123 S. Ct. at 1174-75; Woodford v. Visciotti, 537 U.S. at 25-27, 123 S. Ct. at 360-61; Mosby v. Senkowski, 470 F.3d 515, 519 (2d Cir. 2006), cert. denied, 128 S. Ct. 75 (2007); Hawkins v. Costello, 460 F.3d at 243; Lynn v. Bliden, 443 F.3d at 246; Henry v. Poole, 409 F.3d at 68; Howard v. Walker, 406 F.3d at 122; Cox v. Donnelly, 387 F.3d at 197; Eze v. Senkowski, 321 F.3d at 125; Ryan v. Miller, 303 F.3d 231, 245 (2d Cir. 2002); Loliscio v. Goord, 263 F.3d at 184; Lurie v. Wittner, 228 F.3d at 128-29.

deference to state courts by conflating error (even clear error) with unreasonableness."). However, the Second Circuit has explained "that while '[s]ome increment of incorrectness beyond error is required . . . the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence.'" Jones v. Stinson, 229 F.3d at 119 (quoting Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000)).[9] "[T]he range of reasonable judgment can depend in part on the nature of the relevant rule." Yarborough v. Alvarado, 541 U.S. at 663, 124 S. Ct. at 2149.[10] "Even if the state court issued a decision 'contrary to' clearly established Supreme Court law, . . . a petitioner 'cannot obtain relief . . . unless application of a correct interpretation of that [Supreme Court] decision leads to the conclusion that his rights were violated.'" Cousin v. Bennett, No. 03-2837, -- F.3d --, 2008 WL 53257 at *5 (2d Cir. Jan. 4, 2008).

---

[9]    Accord, e.g., Lynn v. Bliden, 443 F.3d at 246; Henry v. Poole, 409 F.3d at 68; Howard v. Walker, 406 F.3d at 122; Rosa v. McCray, 396 F.3d at 219; Cox v. Donnelly, 387 F.3d at 197, 200-01; Eze v. Senkowski, 321 F.3d at 125; Ryan v. Miller, 303 F.3d at 245; Yung v. Walker, 341 F.3d at 110; Loliscio v. Goord, 263 F.3d at 184.

[10]    The Supreme Court explained:

> [T]he range of reasonable judgment can depend in part on the nature of the relevant rule. If a legal rule is specific, the range may be narrow. Applications of the rule may be plainly correct or incorrect. Other rules are more general, and their meaning must emerge in application over the course of time. Applying a general standard to a specific case can demand a substantial element of judgment. As a result, evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.

Yarborough v. Alvarado, 541 U.S. at 663, 124 S. Ct. at 2149; accord, e.g., Rodriguez v. Miller, 499 F.3d at 143; Hawkins v. Costello, 460 F.3d at 243.

Moreover, the Second Circuit has held "that a state court determination is reviewable under AEDPA if the state decision unreasonably failed to extend a clearly established, Supreme Court defined, legal principle to situations which that principle should have, in reason, governed." Kennaugh v. Miller, 289 F.3d at 45.[11/]

Under the AEDPA, in short, the federal courts "must give the state court's adjudication a high degree of deference." Yung v. Walker, 341 F.3d at 109; accord, e.g., Bell v. Cone, 543 U.S. at 455, 125 S. Ct. at 853; Mosby v. Senkowski, 470 F.3d at 519.

Even where the state court decision does not specifically refer to either the federal claim or to relevant federal case law, the deferential AEDPA review standard applies:

> For the purposes of AEDPA deference, a state court "adjudicate[s]" a state prisoner's federal claim on the merits when it (1) disposes of the claim "on the merits," and (2) reduces its disposition to judgment. When a state court does so, a federal habeas court must defer in the manner prescribed by 28 U.S.C. § 2254(d)(1) to the state court's decision on the federal claim – even if the state court does not explicitly refer to either the federal claim or to relevant federal case law.

Sellan v. Kuhlman, 261 F.3d at 312; accord, e.g., Bell v. Cone, 543 U.S. at 455, 125 S. Ct. at 853 ("Federal courts are not free to presume that a state court did not comply with constitutional dictates

---

[11/]    Accord, e.g., Tueros v. Greiner, 343 F.3d at 591; Yung v. Walker, 341 F.3d at 109; see Yarborough v. Alvarado, 541 U.S. at 665-66, 124 S. Ct. at 2150-51 ("The petitioner contends that if a habeas court must extend a rationale before it can apply to the facts at hand then the rationale cannot be clearly established at the time of the state-court decision. There is force to this argument. Section 2254(d)(1) would be undermined if habeas courts introduced rules not clearly established under the guise of extensions to existing law. At the same time, the difference between applying a rule and extending it is not always clear. Certain principles are fundamental enough that when new factual permutations arise, the necessity to apply the earlier rule will be beyond doubt.") (citations omitted).

on the basis of nothing more than a lack of citation."); Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362,

365 (2002) (State court not required to cite Supreme Court cases, or even be aware of them, to be

entitled to AEDPA deference, "so long as neither the reasoning nor the result of the state-court

decision contradicts them."); Mosby v. Senkowski, 470 F.3d at 519; Hawkins v. Costello, 460 F.3d

at 243; Lynn v. Bliden, 443 F.3d at 246; Howard v. Walker, 406 F.3d at 122; Rosa v. McCray, 396

F.3d at 220; Wade v. Herbert, 391 F.3d 135, 140 (2d Cir. 2004) (Appellate Division held claim was

"'without merit.'"  "Such a summary determination, even absent citation of federal case law, is a

determination 'on the merits' and as such requires the deference specified by § 2254."  Moreover,

"[I]f any reasonable ground was available [for the state court's decision], we must assume the [state]

court relied on it."); Francolino v. Kuhlman, 365 F.3d 137, 141 (2d Cir.) (Where "the Appellate

Division concluded its opinion by stating that it had 'considered and rejected defendants' remaining

claims,'" AEDPA deference applies.), cert. denied, 543 U.S. 872, 125 S. Ct. 110 (2004); Jenkins v.

Artuz, 294 F.3d 284, 291 (2d Cir. 2002) ("In Sellan, we found that an even more concise Appellate

Division disposition – the word 'denied' – triggered AEDPA deference."); but cf. Bell v. Miller, 500

F.3d 149, 155 (2d Cir. 2007) (A "contrary-to-fact construction is not the same as an alternative

holding. . . .  We decline to read a contingent observation as an 'adjudication on the merits.'"  De

novo review applies in such a case.).

        Where the state court decision is not clear as to whether it rests on federal law or state

procedural law, the Second Circuit in Jimenez v. Walker, 458 F.3d 130, 145-46 (2d Cir. 2006), cert.

denied, 127 S. Ct. 976 (2007), instructed that the court must "examine the three clues laid out in

Coleman, Quirama and Sellan" – that is, "(1) the face of the state-court opinion, (2) whether the state court was aware of a procedural bar, and (3) the practice of state courts in similar circumstances." Jimenez v. Walker, 458 F.3d at 145 & n.16; accord, e.g., Clark v. Perez, No. 06-5340, -- F.3d --, 2008 WL 43646 at *9 (2d Cir. Jan 3, 2008).  Using these three factors, the court should classify the decision as either:

> (1)  fairly appearing to rest primarily on federal law or to be interwoven with federal law or
>
> (2)  fairly appearing to rest primarily on state procedural law.

> Absent a clear and express statement of reliance on a state procedural bar, the Harris presumption applies to decisions in the first category and deems them to rest on the merits of the federal claim.  Such decisions are not procedurally barred and must be afforded AEDPA deference as adjudications "on the merits" under 28 U.S.C. § 2254(d).  The Harris presumption does not apply to decisions in the second category, which show themselves to rest on an independent state procedural bar.  Nor does it apply to decisions in the first category which contain a clear statement of reliance on a state procedural bar.  No AEDPA deference is due to these decisions, but the state may successfully assert that habeas relief is foreclosed provided that the independent state procedural bar is adequate to support the judgment and that neither cause and prejudice nor a fundamental miscarriage of justice is shown.

> The effect of these rules is to present federal habeas courts with a binary circumstance: we either apply AEDPA deference to review a state court's disposition of a federal claim or refuse to review the claim because of a procedural bar properly raised.  The middle ground . . . does not exist.

Jimenez v. Walker, 458 F.3d at 145-46 (citations & fns. omitted); accord, e.g., Hawkins v. Costello, 460 F.3d at 242 ("In Jimenez v. Walker, we recently made clear that when a state court rejects a petitioner's claim as either unpreserved or without merit, the conclusive presumption is that the adjudication rested on the merits.").  Of course, "[i]f there is no [state court] adjudication on the

merits [and no procedural bar], then the pre-AEDPA, <u>de</u> <u>novo</u> standard of review applies." <u>Cotto</u> v. <u>Herbert</u>, 331 F.3d 217, 230 (2d Cir. 2003); <u>see also</u> <u>Jimenez</u> v. <u>Walker</u>, 458 F.3d at 145 n.17.

Finally, "[i]f [the] court finds that the state court engaged in an unreasonable application of established law, resulting in constitutional error, it must next consider whether such error was harmless." <u>Howard</u> v. <u>Walker</u>, 406 F.3d at 122.

In addition to the standard of review of legal issues, the AEDPA provides a deferential review standard for state court factual determinations: "a determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1); <u>accord</u>, <u>e.g.</u>, <u>Lynn</u> v. <u>Bliden</u>, 443 F.3d at 246-47; <u>Rosa</u> v. <u>McCray</u>, 396 F.3d at 220. "The petitioner bears the burden of 'rebutting the presumption of correctness by clear and convincing evidence.'" <u>Parsad</u> v. <u>Greiner</u>, 337 F.3d at 181 (quoting § 2254(e)(1)); <u>accord</u>, <u>e.g.</u>, <u>Lynn</u> v. <u>Bliden</u>, 443 F.3d at 246-47.

## II.    OCASIO'S CLAIM THAT HIS 2003 GUILTY PLEA WAS NOT KNOWINGLY OR VOLUNTARILY MADE IS BARRED BY ADEQUATE AND INDEPENDENT STATE GROUNDS AND IN ANY EVENT IS WITHOUT MERIT

Ocasio claims that his "decision to plead guilty was not knowingly or voluntarily made [because] he was threatened by the court and [the] prosecutor, acting jointly, with multiple consecutive sentences if he did not withdraw his challenge to his prior felony statement." (Dkt. No. 1: Pet. Att.: Ocasio 1st Dep't Br. at 10-15.)

The First Department ruled that Ocasio's claim that his guilty plea was unknowing and involuntary was "unpreserved." <u>People</u> v. <u>Ocasio</u>, 23 A.D.3d 176, 176, 802 N.Y.S.2d 621, 622 (1st Dep't 2005), <u>appeal denied</u>, 6 N.Y.3d 851, 816 N.Y.S.2d 757 (2006).

### A.    Ocasio's Claim Is Procedurally Barred By The Adequate and Independent State Ground Doctrine[12]

The Supreme Court has made clear that the "adequate and independent state ground doctrine applies on federal habeas," such that "an adequate and independent finding of procedural default will bar federal habeas review of the federal claim, unless the habeas petitioner can show cause for the default and prejudice attributable thereto, or demonstrate that failure to consider the federal claim will result in a fundamental miscarriage of justice." Harris v. Reed, 489 U.S. 255, 262, 109 S. Ct. 1038, 1043 (1989) (citations & internal quotations omitted).[13]

---

[12]    For additional decisions by this Judge discussing the adequate and independent state ground doctrine in language substantially similar to that in this entire section of this Report and Recommendation, see, e.g., Rivera v. Ercole, 07 Civ. 3577, 2007 WL 2706274 at *7-10 (S.D.N.Y. Sept. 18, 2007) (citing my prior decisions); Murray v. Greene, 06 Civ. 3677, 2006 WL 3751294 at *13-17 (S.D.N.Y. Dec. 21, 2006) (Peck, M.J.) (citing my prior decisions); Olivo v. Thorton, 05 Civ. 3237, 2005 WL 3292542 at *8 (S.D.N.Y. Dec. 6, 2005) (Peck, M.J.) (citing my prior decisions), report & rec. adopted, 2006 WL 1636742 (S.D.N.Y. June 12, 2006); Otero v. Eisenschmidt, 01 Civ. 2562, 2004 WL 2504382 at *17-18 (S.D.N.Y. Nov. 8, 2004) (Peck, M.J.) (citing my prior decisions); Montalvo v. Annetts, 02 Civ. 1056, 2003 WL 22962504 at *18-21 (S.D.N.Y. Dec. 17, 2003) (Peck, M.J.) (citing my prior decisions); Rosario v. Bennett, 01 Civ. 7142, 2002 WL 31852827 at *18- 21 (S.D.N.Y. Dec. 20, 2002) (Peck, M.J.) (citing my prior decisions); Larrea v. Bennett, 01 Civ. 5813, 2002 WL 1173564 at *8-9 (S.D.N.Y. May 31, 2002) (Peck, M.J.), report & rec. adopted, 2002 WL 1808211 (S.D.N.Y. Aug. 6, 2002), aff'd, 368 F.3d 179 (2d Cir. 2004); Mercado v. Portuondo, 99 Civ. 11234, 2000 WL 1663437 at *12 (S.D.N.Y. Nov. 3, 2000) (Peck, M.J.), report & rec. adopted, 2001 WL 987926 (S.D.N.Y. Aug. 29, 2001), aff'd, 77 Fed. Appx. 546 (2d Cir. 2003); Owens v. Portuondo, 98 Civ. 6559, 1999 WL 378343 at *5 (S.D.N.Y. June 9, 1999) (Peck, M.J.), aff'd, 205 F.3d 1324 (2d Cir. 2000).

[13]    See also, e.g., Schlup v. Delo, 513 U.S. 298, 314-16, 115 S. Ct. 851, 860-61 (1995); Coleman v. Thompson, 501 U.S. 722, 735, 111 S. Ct. 2546, 2557 (1991); Murray v. Carrier, 477 U.S. 478, 485-88, 496, 106 S. Ct. 2639, 2644-45, 2649-50 (1986); Jones v. Vacco, 126 F.3d 408, 415 (2d Cir. 1997); Garcia v. Lewis, 188 F.3d 71, 76-77 (2d Cir. 1999); Reyes v. (continued...)

"[I]n order to preclude federal review [under the adequate and independent doctrine], the last state court to render judgment must 'clearly and expressly state . . . that its judgment rest[ed] on a state procedural bar.'" Jones v. Vacco, 126 F.3d at 415 (quoting Glenn v. Bartlett, 98 F.3d at 724). The Second Circuit has made clear that "federal habeas review is foreclosed when a state court has expressly relied on a procedural default as an independent and adequate state ground, even where the state court has also ruled in the alternative on the merits of the federal claim." Velasquez v. Leonardo, 898 F.2d at 9; accord, e.g., Harris v. Reed, 489 U.S. at 264 n.10, 109 S. Ct. at 1044 n.10 ("[A] state court need not fear reaching the merits of a federal claim in an alternative holding. By its very definition, the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law.").[14] Thus, "as long as the state court explicitly invokes a state procedural bar rule as a separate basis for decision," the adequate and independent doctrine "curtails reconsideration of the federal issue on federal habeas." Harris v. Reed, 489 U.S. at 264 n.10, 109 S. Ct. at 1044 n.10.

---

[13]     (...continued)
Keane, 118 F.3d 136, 138-40 (2d Cir. 1997); Glenn v. Bartlett, 98 F.3d 721, 724 (2d Cir. 1996), cert. denied, 520 U.S. 1108, 117 S. Ct. 1116 (1997); Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990).

[14]     See, e.g., Garcia v. Lewis, 188 F.3d at 77-82; Glenn v. Bartlett, 98 F.3d at 724-25; see also, e.g., Santiago v. People, 97 Civ. 5076, 1998 WL 803414 at *4 (S.D.N.Y. Oct. 13, 1998) ("When the state court rejects a claim both on the merits and because it was waived under the state's procedural law, review of the claim on a federal habeas corpus petition is barred.").

Ocasio's brief to the First Department raised the same claim – that his "decision to plead guilty was not knowingly or voluntarily made where he was threatened by the court and [the] prosecutor, acting jointly, with multiple consecutive sentences if he did not withdraw his challenge to his prior felony statement" (Dkt. No. 1: Pet. Att.: Ocasio 1st Dep't Br. at 10-15) – that he now raises as a habeas claim.  The First Department held that:

> The court properly adjudicated defendant a persistent violent felony offender. The court fully advised defendant of his right to challenge predicate convictions on constitutional grounds, and it correctly found that there was nothing defective about defendant's 1994 conviction.  Defendant's remaining contentions are unpreserved and we decline to reach them in the interest of justice.  Were we to reach these claims, we would find them to be without merit.  We add only that even if the court has belabored the obvious (that defendant faced consecutive sentences of up to 25 years to life if convicted after trial) before rather than after defendant pleaded guilty, defendant's claim that the court coerced the plea would be meritless just the same.

People v. Ocasio, 23 A.D.3d 176, 176, 802 N.Y.S.2d 621, 621-22 (1st Dep't 2005) (citations omitted), appeal denied, 6 N.Y.3d 851, 816 N.Y.S.2d 757 (2006).

State courts are not required to use any particular language:

> We encourage state courts to express plainly, in every decision potentially subject to federal review, the grounds upon which their judgments rest, but we will not impose on state courts the responsibility for using particular language in every case in which a state prisoner presents a federal claim – every state appeal, every denial of state collateral review – in order that federal courts might not be bothered with reviewing state law and the record in the case.

Coleman v. Thompson, 501 U.S. at 739, 111 S. Ct. at 2559.

Furthermore, unlike the situation where the state court holds that claims were either unpreserved or without merit, which the Second Circuit has found is usually too ambiguous to

preclude habeas review,[15] here the First Department explicitly stated that it found petitioner's claim "unpreserved," and the fact that the First Department also stated the conclusion it would reach on the merits if it was to review this claim, does not change the result. See, e.g., Fama v. Comm'r of Corr. Servs., 235 F.3d 804, 810-11 & n.4 (2d Cir. 2000) ("where a state court says that a claim is 'not preserved for appellate review' and then ruled 'in any event' on the merits, such a claim is not preserved"); Glenn v. Bartlett, 98 F.3d at 724-25 & n.3 (state decision which denied prosecutorial misconduct claim as not preserved for appellate review represented an independent and adequate state procedural ground even though court addressed merits of claim "in the interests of justice"); Velasquez v. Leonardo, 898 F.2d at 9 (state decision which denied claims as procedurally barred but then alternatively addressed merits rested on adequate and independent state grounds).  Thus, the First Department's decision here unambiguously rested on a state procedural ground.[16]

The Supreme Court has established that "the procedural bar doctrine only precludes habeas review when the state procedural ground is firmly established and regularly followed by the

---

[15]    See, e.g., Galarza v. Keane, 252 F.3d 630, 637 (2d Cir. 2001) ("We have found a state court's reliance on a state procedural bar to be ambiguous, and thus refused to invoke a procedural bar, where . . . the state court rejected defendant's claims on appeal as 'either meritless or unpreserved.'");  Tankleff v. Senkowski, 135 F.3d 235, 247 (2d Cir. 1998); Reid v. Senkowski, 961 F.2d 374, 377 (2d Cir. 1992).

[16]    The New York Court of Appeals denied petitioner's application for leave to appeal.  (See page 11 above.)  The Supreme Court held in Ylst v. Nunnemaker, 501 U.S. 797, 111 S. Ct. 2590 (1991), with respect to unexplained orders, that federal habeas courts should presume that "[w]here there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground."  Id. at 803, 111 S. Ct. at 2594.  Petitioner has presented no facts to rebut that presumption here.

state courts." <u>Simpson</u> v. <u>Portuondo</u>, 01 Civ. 8744, 2002 WL 31045862 at *4 (S.D.N.Y. June 4, 2002) (citing <u>James</u> v. <u>Kentucky</u>, 466 U.S. 341, 348-49, 104 S. Ct. 1830, 1835 (1984)); <u>accord</u>, <u>e.g.</u>, <u>Clark</u> v. <u>Perez</u>, No. 06-5340, -- F.3d --, 2008 WL 43646 at *6 (2d Cir. Jan. 3, 2008).

Under New York law, "[a]s a general rule points which were not raised at trial may not be considered for the first time on appeal." <u>People</u> v. <u>Thomas</u>, 50 N.Y.2d 467, 471, 429 N.Y.S.2d 584 (1980) (citing C.P.L. § 470.05(2)).[17/] Moreover, a party must make a specific protest at the time of a claimed error to preserve an issue for appellate review. <u>E.g.</u>, <u>People</u> v. <u>Hardy</u>, 4 N.Y.3d 192, 197 n.3, 791 N.Y.S.2d 513, 517 n.3 (2005). Failure to specify the grounds for a claim of error at the time of an objection (either because an objection is general, or because it specifies a different ground than that raised on appeal) renders claims not specified unpreserved for appellate review. <u>E.g.</u>, <u>Olivo</u> v. <u>Thorton</u>, 05 Civ. 3237, 2005 WL 3292542 at *10 (S.D.N.Y. Dec. 6, 2005)

---

[17/]    C.P.L. § 470.05(2) provides, in relevant part:

> For the purposes of appeal, a question of law with respect to a ruling or instruction of a criminal court during a trial or proceeding is presented when a protest thereto was registered, by the party claiming error, at the time of such ruling or instruction or at any subsequent time when the court had an opportunity of effectively changing the same. Such protest need not be in the form of an "exception" but is sufficient if the party made his position with respect to the ruling or instruction known to the court, or if in response to a protest by a party, the court expressly decided the question raised on appeal. In addition, a party who without success has either expressly or impliedly sought or requested a particular ruling or instruction, is deemed to have thereby protested the court's ultimate disposition of the matter or failure to rule or instruct accordingly sufficiently to raise a question of law with respect to such disposition or failure regardless of whether any actual protest thereto was registered.

(Peck, M.J.) ("Under New York law, a party's failure to specify the grounds for its general objection also renders its argument unpreserved for appellate review.") (citing N.Y. cases).

Specifically, "New York courts have held that, in order to preserve a claim that his guilty plea was involuntarily made, a defendant must either move to withdraw the plea under C.P.L. § 220.60(3) or move to vacate the judgment of conviction under C.P.L. § 440.10."[18/] Snitzel v. Murry, 371 F. Supp. 2d 295, 300-01 (W.D.N.Y. 2004) (citing New York cases); accord, e.g., Larweth v. Conway, No. 04-CV-0050, 2007 WL 1861498 at *4 (W.D.N.Y. June 29, 2007) ("In New York, the 'firmly established and regularly followed rule' for preserving a claim that a guilty plea was involuntarily entered requires a defendant to move to withdraw the plea or to vacate the judgment of conviction.") (citations omitted).[19/]

---

[18/] C.P.L. § 220.60(3) provides that: "At any time before the imposition of sentence, the court in its discretion may permit a defendant who has entered a plea of guilty to the entire indictment or to part of the indictment, or a plea of not responsible by reason of mental disease or defect, to withdraw such plea, and in such event the entire indictment, as existed at the time of such plea, is restored." C.P.L. § 440.10 details the situations in which the court may, after the entry of a judgment, "upon motion of the defendant, vacate such judgment."

[19/] See, e.g., People v. Williams, 6 A.D.3d 746, 746, 776 N.Y.S.2d 329, 330 (3d Dep't) ("[D]efendant's challenge to the voluntariness of his [guilty] plea is unpreserved, as he neither moved to withdraw his plea nor to vacate the judgment of conviction, 'a necessary prerequisite to preserving this claim.'") (citations omitted), appeal denied, 3 N.Y.3d 650, 782 N.Y.S.2d 421 (2004); People v. Hughes, 3 A.D.3d 736, 736, 770 N.Y.S.2d 666, 667 (3d Dep't 2004) ("Defendant now appeals contending . . . that he was coerced into entering the [guilty] plea and, therefore, his waiver of appeal should not be enforced. Defendant, however, did not move to withdraw his plea or vacate the judgment of conviction, a necessary prerequisite to preserving this claim."); People v. Harrington, 3 A.D.3d 737, 738, 770 N.Y.S.2d 792, 793 (3d Dep't 2004) ("[H]aving failed to move to withdraw his guilty plea or to demonstrate that he moved to vacate the judgment of conviction on this ground,
(continued...)

Here, Ocasio never sought to withdraw his guilty plea, nor did he bring any C.P.L.

§ 440 motion to vacate his conviction.  Accordingly, Ocasio's first habeas claim, that his guilty plea

was not knowing or voluntary, should be <u>DENIED</u> as procedurally barred by adequate and

independent state law grounds.[20/]

    **B.**    **In Any Event, Ocasio's Claim That His Guilty Plea Was Not Knowing or Voluntary Is Without Merit**[21/]

---

[19/]    (...continued)
defendant's challenge to the voluntariness of his plea is unpreserved."), <u>appeal denied</u>, 4 N.Y.3d 887, 798 N.Y.S.2d 732 (2005); <u>People</u> v. <u>Urbina</u>, 1 A.D.3d 717, 717, 766 N.Y.S.2d 640, 640 (3d Dep't 2003) ("[S]ince defendant failed to move to withdraw his guilty plea or to vacate the judgment of conviction, his challenge to the voluntariness of his plea is unpreserved for our review."), <u>appeal denied</u>, 1 N.Y.3d 602, 776 N.Y.S.2d 233 (2004); <u>People</u> v. <u>De Berardinis</u>, 304 A.D.2d 914, 915, 757 N.Y.S.2d 641, 643 (3d Dep't) ("[D]efendant's challenge to the voluntariness of her guilty plea is not preserved for our review because she failed to move to withdraw the plea or vacate the judgment of conviction."), <u>appeal denied</u>, 100 N.Y.2d 580, 764 N.Y.S.2d 390 (2003).

[20/]    Because there is an adequate and independent finding by the First Department that petitioner procedurally defaulted on his involuntary and unknowing plea claim, petitioner would have to show in his habeas petition "cause for the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." <u>Coleman</u> v. <u>Thompson</u>, 501 U.S. at 750, 111 S. Ct. at 2565; <u>see also</u>, <u>e.g.</u>, <u>Schlup</u> v. <u>Delo</u>, 513 U.S. at 324-27, 115 S. Ct. at 865-67 (fundamental miscarriage of justice may be demonstrated by showing through "new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial," that "it is more likely than not that no reasonable juror would have convicted him in light of the new evidence").  Petitioner does not allege cause, prejudice or a fundamental miscarriage of justice.

[21/]    For additional decisions by this Judge discussing the legal standards for whether a guilty plea was made involuntarily and unknowingly, in language substantially similar to that in this section of this Report and Recommendation, <u>see</u>, <u>e.g.</u>, <u>Lopez</u> v. <u>Miller</u>, 05 Civ. 7560, 2007 WL 2032839 at *7 (S.D.N.Y. July 17, 2007) (Peck, M.J.); <u>Gomez</u> v. <u>Duncan</u>, 02 Civ. 0846,
                                                                (continued...)

Constitutional due process requires that a guilty plea be voluntary, knowing and intelligent. E.g., United States v. Ruiz, 536 U.S. 622, 629, 122 S. Ct. 2450, 2455 (2002); Bousley v. United States, 523 U.S. 614, 618, 118 S. Ct. 1604, 1609 (1998); Mabry v. Johnson, 467 U.S. 504, 508, 104 S. Ct. 2543, 2546-47 (1984); Brady v. United States, 397 U.S. 742, 748, 90 S. Ct. 1463, 1469 (1970); Boykin v. Alabama, 395 U.S. 238, 242-43 & n.5, 89 S. Ct. 1709, 1711-12 & n.5 (1969); Hanson v. Phillips, 442 F.3d 789, 797-98 (2d Cir. 2006).[22]

"The standard for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" Urena v. New York, 160 F. Supp. 2d 606, 610 (S.D.N.Y. 2001) (Weinstein, D.J.) (quoting Ventura v. Meachum, 957 F.2d 1048, 1058 (2d Cir. 1992)). A plea is involuntary where the defendant did not have "knowledge of the nature of the constitutional protections he will forgo by

---

[21]    (...continued)
2004 WL 119360 at *18 (S.D.N.Y. Jan. 27, 2004) (Peck, M.J.); Marcelin, v. Garvin, 97 Civ. 2996, 1999 WL 977221 at *5 (S.D.N.Y. Oct. 26, 1999) (Peck, M.J.); Singh v. Kuhlmann, 94 Civ. 2213, 1995 WL 870113 at *5 (S.D.N.Y. Aug. 25, 1995) (Peck, M.J.), report & rec. adopted, 1996 WL 337283 (S.D.N.Y. June 19, 1996); Foreman v. Garvin, 99 Civ. 9078, 2000 WL 631397 at *10 (S.D.N.Y. May 16, 2000) (Peck, M.J.).

[22]    See also, e.g., Wilson v. McGinnis, 413 F.3d 196, 198-200 (2d Cir. 2005); United States v. Blackwell, 199 F.3d 623, 625-26 (2d Cir. 1999); Innes v. Dalsheim, 864 F.2d 974, 977 (2d Cir. 1988), cert. denied, 493 U.S. 89, 110 S. Ct. 50 (1989); Matusiak v. Kelly, 786 F.2d 536, 543 (2d Cir.), cert. denied, 479 U.S. 805, 107 S. Ct. 248 (1986); Sabino v. Greiner, 99 Civ. 12022, 2000 WL 328904 at *2 (S.D.N.Y. Mar. 29, 2000); Heron v. New York, 98 Civ. 7941, 1999 WL 1125059 at *5 (S.D.N.Y. Dec. 8, 1999); James v. Greiner, 97 Civ. 2652, 1999 WL 619636 at *4 (S.D.N.Y. Aug. 16, 1999); Charnock v. Herbert, 60 F. Supp. 2d 91, 99-100 (W.D.N.Y. 1999); Ramirez v. Headley, 98 Civ. 2603, 1998 WL 788782 at *5 (S.D.N.Y. Nov. 10, 1998); Thomas v. Senkowski, 968 F. Supp. 953, 955 (S.D.N.Y. 1997).

entering his plea." Matusiak v. Kelly, 786 F.2d at 543.[23/] "A plea is 'intelligent' and 'voluntary' when a defendant had the advice of counsel, understood the consequences of his plea and the plea was not physically or mentally coerced." Heron v. New York, 1999 WL 1125059 at *5; see, e.g., Miller v. Angliker, 848 F.2d 1312, 1320 (2d Cir.), cert. denied, 488 U.S. 890, 109 S. Ct. 224 (1988); France v. Strack, No. 99-CV-2510, 2001 WL 135744 at *3 (E.D.N.Y. Jan. 30, 2001) ("Pleading guilty to avoid a more severe sentence does not in itself qualify as involuntary because the plea can nonetheless be the 'product of a free and rational choice, especially where the defendant was represented by competent counsel whose advice was that the plea would be to the defendant's advantage.'"); Ramirez v. Headley, 98 Civ. 2603, 1998 WL 788782 at *5 (S.D.N.Y. Nov. 10, 1998); Martuzas v. Reynolds, 983 F. Supp. 87, 94 (N.D.N.Y. 1997) (Pooler, D.J.); Phan v. McCoy, No. 94-CV-1596, 1997 WL 570690 at *6 (N.D.N.Y. Aug. 28, 1997) (Pooler, D.J.) ("The mere fact that a defendant pleaded guilty solely to limit his possible penalty does not make that plea involuntary."); United States v. Millan-Colon, 829 F. Supp. 620, 635 (S.D.N.Y. 1993), aff'd, 17 F.3d 14 (2d Cir. 1994). A "'plea of guilty entered by one fully aware of the direct consequences' of the plea is voluntary in a constitutional sense 'unless induced by threats, misrepresentations, or perhaps by

---

[23/]    Accord, e.g., Sanchez v. Senkowski, No. 93- CV-4385, 1996 WL 1057150 at *3 (E.D.N.Y. June 19, 1996); Wax v. Keane, 89 Civ. 7843, 1991 WL 220962 at *3 (S.D.N.Y. Oct. 17, 1991).

promises that are by their nature improper.'" Bousley v. United States, 523 U.S. at 619, 118 S. Ct. at 1609 (ellipses omitted) (quoting Brady v. United States, 397 U.S. at 744, 90 S. Ct. at 1472)).[24]

"'It is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked.'" Bousley v. United States, 523 U.S. at 621, 118 S. Ct. at 1610 (quoting Mabry v. Johnson, 467 U.S. at 508, 104 S. Ct. at 2547-47); see also, e.g., Ramirez v. Headley, 1998 WL 788782 at *5.

As the Supreme Court has noted, statements made at plea allocutions "carry a strong presumption of verity" and "constitute a formidable barrier in any subsequent collateral proceeding." Blackledge v. Allison, 431 U.S. 63, 74, 97 S. Ct. 1621, 1629 (1977); see, e.g., Adames v. United States, 171 F.3d 728, 732-33 (2d Cir. 1999) (statements at plea allocution "'carry a strong presumption of verity' . . . and are generally treated as conclusive in the face of the defendant's later attempt to contradict them," citing cases); United States v. Torres, 129 F.3d 710, 715 (2d Cir. 1997) ("A defendant's bald statements that simply contradict what he said at his plea allocution are not sufficient grounds to withdraw the guilty plea.").[25]

---

[24]    Accord, e.g., Mabry v. Johnson, 467 U.S. at 59, 104 S. Ct. at 2547; United States v. Rossillo, 853 F.2d 1062, 1064 (2d Cir. 1988); Smylis v. City of New York, 25 F. Supp. 2d 461, 465 (S.D.N.Y. 1998); see also, e.g., Willbright v. Smith, 745 F.2d 779, 780-81 (2d Cir. 1984).

[25]    See also, e.g., United States v. Gonzalez, 970 F.2d 1095, 1100-01 (2d Cir. 1992); Panuccio v. Kelly, 927 F.2d 106, 110-11 (2d Cir. 1991); Martinez v. Costello, 03 Civ. 2763, 2004 WL 26306 at *6 (S.D.N.Y. Jan. 5, 2004) ("'Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal.'"); Santobello v. United States, 94 Cr. 119, 97 Civ. 4404, 1998 WL 113950 at *2-3 (S.D.N.Y. Mar. 13, 1998); United States v. Caesar, 94

(continued...)

Here, although Ocasio claims that he pleaded guilty when threatened with a heavier sentence if he proceeded to trial, the statements that he made during the March 26, 2003 plea hearing "demonstrate that the plea was knowing in that it was entered with full knowledge of the charge and the consequences of pleading guilty." <u>Martinez</u> v. <u>Costello</u>, 2004 WL 26306 at *6. Justice Yates advised Ocasio of the rights he was giving up by pleading guilty and confirmed that no one had "made any other promises or threats to make [Ocasio] plead guilty." (3/26/03 Plea Tr. at 3-5.) Ocasio confirmed that all of the factual details contained in the indictment were true and that he did not wish to challenge the persistent violent felony statement. (<u>See</u> pages 2-3 above.) Justice Yates did not pressure Ocasio to accept the plea, explicitly asking Ocasio if he wished to accept the plea and whether it conformed with what he had been promised. (3/26/03 Plea Tr. 4-6.) Nor did Justice Yates (or the prosecutor) refer to the possible sentence if Ocasio were to proceed to trial. Ocasio's decision to plead guilty on March 26, 2003 was not coerced and was not made involuntarily or unknowingly. <u>See</u>, <u>e.g.</u>, <u>Rosenberger</u> v. <u>United States</u>, 133 Fed. Appx. 799, 801 (2d Cir. 2005) (Defendant "has set forth no evidence, other than his self-serving, conclusory allegations, that he was coerced into pleading guilty. Moreover, the plea allocution indicates that [defendant's] guilty

_____

25/    (...continued)
Cr. 59, 1995 WL 312443 at *3 (S.D.N.Y. May 23, 1995) ("The Court notes that statements made during a plea allocution carry a strong presumption of verity. Such statements are conclusive absent credible reason justifying departure from their apparent truth.") (citations & internal quotation marks omitted); <u>United States</u> v. <u>Napolitano</u>, 212 F. Supp. 743, 747 (S.D.N.Y. 1963) (Weinfeld, D.J.) ("The defendant's admissions . . . [at guilty plea] are solemn declarations; they are not to be lightly disregarded in favor of his present self-serving assertion . . .").

plea . . . was knowing and voluntary."); United States v. Davis, 48 Fed. Appx. 809, 811-12 (2d Cir.

2002) ("During his plea allocution, [defendant] admitted his guilt under oath and in his own words,

and stated that his plea was free and voluntary, that no threats or untoward promises had been made

to induce his plea, and that he was satisfied with the advice of counsel. . . . Although since his guilty

plea [defendant] has consistently protested his innocence of the charges [and claims his counsel

coerced him to plead guilty], a claim of innocence [and coercion by counsel] is not a basis for

withdrawing a guilty plea unless 'supported by evidence."); United States v. Bonilla, 17 Fed. Appx.

11, 13 (2d Cir. 2000) ("This Circuit has consistently affirmed denials of motions to withdraw guilty

pleas when the defendant's allegations are 'directly contradicted by his clear statements at allocution'

that contained sufficient factual detail about the offense."); Gomez v. Duncan, 2004 WL 119360 at

*19 ("This Court may credit [petitioner's] statements at the plea allocution – that his guilty plea was

voluntary and not the result of any threats or promises – over his later allegations of coercion.")

(record cites omitted; citing cases).[26]

---

[26]    See also, e.g., United States v. Torres, 129 F.3d at 715; United States v. Gonzalez, 970 F.2d
at 1100-01; Baker v. Murray, 460 F. Supp. 2d 425, 433 (W.D.N.Y. 2006) ("Furthermore,
petitioner has not provided credible evidence that would justify overlooking his statements
under oath that he was choosing to plead guilty of his own accord. In the context of a plea
allocution, a defendant's '[s]olemn declarations in open court carry a strong presumption of
verity.'"); Urena v. New York, 160 F. Supp. 2d at 611 (Petitioner "stated on the record that
he knew that he was giving up the right to trial and the safeguards that accompany that right,
that he was not threatened or forced to plead guilty, and that he sold over two ounces of
cocaine to an undercover officer. These statements undermine petitioner's claim that his plea
was involuntary . . . .") (citing cases); France v. Strack, 2001 WL 135744 at *4 ("Where a
petitioner's claims of mistake and coercion find no support in the record and are contradicted
by the statements made under oath at the plea proceeding, they do not entitle him to relief.");
                                                                                        (continued...)

Nor did Justice Yates coerce Ocasio into retracting his post-plea objections to his persistent violent felony adjudication. On May 30, 2003, Justice Yates agreed to Ocasio's request that he look into whether his 1994 conviction was unconstitutional even though Ocasio had admitted to and been adjudicated a persistent violent felony offender on March 26, 2003. (See page 5 above.) At the next hearing on June 13, 2003, Justice Yates tried to ascertain whether there was any reason to "undo [Ocasio's] previous admission" regarding the persistent violent felony statement but also suggested that "this would be a good case to try," and that Ocasio faced a possible 25 years to life sentence and his sentences could run consecutive. (6/13/03 Tr. at 2-3.)[27] Justice Yates nevertheless did not rule on the issue or sentence Ocasio at that time, but rather adjourned sentencing in order to review the minutes from Ocasio's 1994 guilty plea. (See page 8 above.) Only after his review of the 1994 minutes convinced him that Ocasio properly was found to be a persistent violent felony offender did Justice Yates sentence Ocasio. (See pages 9-10 above.)

Furthermore, even if Ocasio had not already pleaded guilty and had not already admitted the persistent violent felony statement, Justice Yates' accurate statements concerning higher

---

[26] (...continued)
United States v. Hoffenberg, 169 F.R.D. 267, 275 (S.D.N.Y. 1996), aff'd, Nos. 97-1159, 97-1166, 164 F.3d 620 (table), 1998 WL 695933 (2d Cir. Sept. 22, 1998); Singh v. Kuhlmann, 1995 WL 870113 at *7; United States v. Caesar, 1995 WL 312443 at *4 ("This Court is justified in crediting [defendants'] sworn statements at allocution over their later self-serving allegations of coercion."); United States v. Collado-Gomez, 674 F. Supp. 426, 428 (E.D.N.Y. 1987), aff'd, 854 F.2d 1315 (2d Cir. 1988).

[27] Contrary to Ocasio's claim, his own counsel – not the prosecutor – reiterated Justice Yates' suggestion that any trial might lead to the imposition of consecutive sentences. (6/13/03 Tr. at 3.)

sentences that might result from trial would not have rendered a subsequent (let alone a prior) guilty plea involuntary. <u>See</u>, <u>e.g.</u>, <u>Bordenkircher</u> v. <u>Hayes</u>, 434 U.S. 357, 364, 98 S. Ct. 663, 668 (1978) ("While confronting a defendant with the risk of more severe punishment clearly may have a 'discouraging effect on the defendant's assertion of his trial rights, the imposition of these difficult choices [is] an inevitable'-and permissible-'attribute of any legitimate system which tolerates and encourages the negotiation of pleas.'"); <u>Oguntunji</u> v. <u>Artus</u>, No. 05-CV-1240, 2007 WL 1028934 at *8 (E.D.N.Y. Mar. 26, 2007) (Judge's statements about the maximum sentence petitioner could receive if he went to trial and was convicted were "more in the nature of notice than a threat."); <u>Desrosiers</u> v. <u>Phillips</u>, No. CV-05-2941, 2006 WL 2092481 at *10 (E.D.N.Y. July 27, 2006); <u>Gil</u> v. <u>Mazzuca</u>, 03 Civ. 3316, 2004 WL 389103 at *8 (S.D.N.Y. Mar. 3, 2004) (Defendant's claim "that he was coerced into pleading guilty by the trial court's statements that he would be sentenced to 'upwards of twenty years' if he was found guilty by a jury" did not render defendant's guilty plea involuntary. "Case law is replete with instances where similar warnings from a [state] trial judge as to a potential sentence after trial have passed constitutional muster."); <u>Gomez</u> v. <u>Duncan</u>, 2004 WL 119360 at *22 & nn. 23-24 ("New York courts [applying New York law] distinguish between a trial judge 'impart[ing] a reasonable assessment of the sentencing prospects in the event of a conviction,' which is permissible, and 'unequivocally stat[ing] that upon a conviction, the maximum sentence would be imposed,' which is coercive.") (citing N.Y. cases); <u>Oyague</u> v. <u>Artuz</u>, 274 F. Supp. 2d 251, 258 (E.D.N.Y. 2003) (Weinstein, D.J.), <u>aff'd</u>, 393 F.3d 99 (2d Cir. 2004).

Ocasio's claim that Justice Yates' comments coerced his guilty plea or coerced him to withdraw his challenge to the predicate felony statement should be <u>DENIED</u>, on adequate and independent state grounds and on the merits.

**III.    OCASIO'S SECOND HABEAS CLAIM, THAT THE TRIAL COURT FAILED TO ADVISE HIM THAT HE HAD A RIGHT TO A HEARING TO CONTEST A PERSISTENT VIOLENT FELON STATEMENT, IS MERITLESS UNDER NEW YORK LAW AND IS NOT COGNIZABLE ON HABEAS REVIEW UNDER <u>LACKAWANNA V. COSS</u>**

Ocasio claims that "the lower court impermissibly failed to advise [him] that he had a right to a hearing, if he made a sufficient showing, that the convictions which would make him a predicate violent felon were not constitutionally obtained." (Dkt. No. 1: Pet. Att.: Ocasio 1st Dep't Br. at 16-23.)

The First Department held that Justice Yates "properly adjudicated defendant a persistent violent felony offender. The court fully advised defendant of his right to challenge predicate convictions on constitutional grounds (<u>see</u> CPL 400.15, 400.16), and it correctly found that there was nothing defective about defendant's 1994 conviction." <u>People</u> v. <u>Ocasio</u>, 23 A.D.3d 176, 176, 802 N.Y.S.2d 621, 621-22 (1st Dep't 2005), <u>appeal denied</u>, 6 N.Y.3d 851, 816 N.Y.S.2d 757 (2006).

**A.    Ocasio's Claim That Justice Yates Failed To Advise Him of His Right To a Hearing To Contest His Prior Conviction Is Meritless Under New York Law**

"A persistent violent felony offender is a person who stands convicted of a violent felony offense as defined in subdivision one of section 70.02 . . . , after having previously been subjected to two or more predicate violent felony convictions . . . ." C.P.L. § 70.08(1)(a). The

C.P.L. sets forth the procedural requirements for establishing whether a defendant is a persistent violent felony offender: "[A] statement must be filed by the prosecutor before sentence is imposed setting forth the date and place of each alleged predicate violent felony conviction. . . . The defendant must be given a copy of such statement and the court must ask him whether he wishes to controvert any allegation made therein. . . . Uncontroverted allegations in the statement shall be deemed to have been admitted by the defendant." C.P.L. §§ 400.15(2)-(3), § 400.16.[28]  The court must conduct a hearing where "the defendant controverts an allegation in the statement and the uncontroverted allegations in such statement are not sufficient to support a finding that the defendant has been subjected to a predicate violent felony conviction." C.P.L. § 400.15 (5).  No hearing is required, however, where the defendant admits the predicate felonies.  C.P.L. § 400.15(4).[29]

---

[28]    Ocasio incorrectly cited C.P.L. § 400.21 in his brief (Ocasio 1st Dep't Br. at 16-17), which applies to procedures for determining whether a defendant is a second felony offender or second felony drug offender, and not a persistent violent felony offender.  Justice Yates adjudicated Ocasio a persistent violent felony offender, pursuant to C.P.L. § 400.16.  (See Dkt. No. 6: 3/26/03 Plea Tr. at 9-10.)

[29]    C.P.L. § 400.15 provides:

> **2. Statement to be filed.**  When information available to the court or to the people prior to sentencing for a violent felony offense indicates that the defendant may have previously been subjected to a predicate violent felony conviction, a statement must be filed by the prosecutor before sentence is imposed setting forth the date and place of each alleged predicate violent felony conviction.  Where the provisions of subparagraph (v) of paragraph (c) of subdivision one of section 70.04 of the penal law apply, such statement also shall set forth the date of commencement and the date of termination as well as the place of imprisonment for each period of incarceration to be used for tolling of the ten year limitation set forth in subparagraph (iv) of paragraph (b) of such subdivision.

(continued...)

---

29/    (...continued)

**3.    Preliminary examination.**    The defendant must be given a copy of such statement and the court must ask him whether he wishes to controvert any allegation made therein.  If the defendant wishes to controvert any allegation in the statement, he must specify the particular allegation or allegations he wishes to controvert. Uncontroverted allegations in the statement shall be deemed to have been admitted by the defendant.

**4.    Cases where further hearing is not required.**    Where the uncontroverted allegations in the statement are sufficient to support a finding that the defendant has been subjected to a predicate violent felony conviction the court must enter such finding and when imposing sentence must sentence the defendant in accordance with the provisions of section 70.04 of the penal law.

**5. Cases where further hearing is required.**  Where the defendant controverts an allegation in the statement and the uncontroverted allegations in the statement are not sufficient to support a finding that the defendant has been subjected to a predicate violent felony conviction the court must proceed to hold a hearing.

**6.    Time for hearing.**    In any case where a copy of the statement was not received by the defendant at least two days prior to the preliminary examination, the court must upon request of the defendant grant an adjournment of at least two days before proceeding with the hearing.

**7.    Manner of conducting hearing.**

(a)  A hearing pursuant to this section must be before the court without jury.  The burden of proof is upon the people and a finding that the defendant has been subjected to a predicate violent felony conviction must be based upon proof beyond a reasonable doubt by evidence admissible under the rules applicable to a trial of the issue of guilt.

(b)  A previous conviction in this or any other jurisdiction which was obtained in violation of the rights of the defendant under the applicable provisions of the constitution of the United States must not be counted in determining whether the defendant has been subjected to a predicate violent felony conviction. The defendant may, at any time during the course of the hearing hereunder controvert an allegation

(continued...)

39

At the March 26, 2003 plea hearing, Justice Yates informed Ocasio that the People had filed a persistent violent felony statement and told Ocasio:

> You have a right to challenge that statement. You can challenge the statement on the grounds that it is not completely true.

> You can also challenge it on the grounds that any one or more of these convictions were illegally obtained.

> You can also challenge it on the grounds that the calculation of the incarceration periods is not correct.

(Dkt. No. 6: 3/26/03 Plea Tr. at 10.) Justice Yates complied with C.P.L. § 400.15(2)-(3). Ocasio stated that he did not wish to challenge the statement and Justice Yates then found Ocasio to be a persistent violent offender. (3/26/03 Plea Tr. at 10.) This complied with C.P.L. § 400.15(3)-(4).

---

[29]/    (...continued)

with respect to such conviction in the statement on the grounds that the conviction was unconstitutionally obtained. Failure to challenge the previous conviction in the manner provided herein constitutes a waiver on the part of the defendant of any allegation of unconstitutionality unless good cause be shown for such failure to make timely challenge.

(c) At the conclusion of the hearing the court must make a finding as to whether or not the defendant has been subjected to a predicate violent felony conviction.

**8. Subsequent use of predicate violent felony conviction finding.** Where a finding has been entered pursuant to this section, such finding shall be binding upon that defendant in any future proceeding in which the issue may arise.

C.P.L. § 400.15(2)-(8).

Nothing in the C.P.L. required Justice Yates in 2003, or Justice Beldock in 1994, to inform Ocasio that he had the right to a <u>hearing</u> to controvert the predicate felony statement; the C.P.L. merely required the judge to tell Ocasio that he had a right to controvert the allegations contained in the predicate felony statement. <u>See</u> C.P.L. §§ 400.15, 400.16. Both Justice Yates and Justice Beldock clearly satisfied these statutory requirements. (<u>See</u> pages 3-4, 8-9 above.) Ocasio's appellate counsel did not cite a single New York case imposing a requirement that the judge inform the defendant of a right to a hearing, and the C.P.L. could not be clearer. <u>See</u>, <u>e.g.</u>, <u>People</u> v. <u>Nance</u>, 845 N.Y.S.2d. 595, 596 (4th Dep't 2007) (Appellate Division rejects defendant's claim that "County court erred in failing to conduct a hearing when he challenged the accuracy of the second felony offender statement at sentencing. . . . [D]efendant did not contend that he had not been convicted of the prior felony, nor did he contest its constitutionality. Defendant did not expressly controvert the dates of his earlier incarceration set forth in a certified statement from the correctional facility upon which the court relied in determining that defendant was a second felony offender, and thus '[n]o further formal hearing was required.'"); <u>People</u> v. <u>Todd</u>, 306 A.D.2d 504, 505, 761 N.Y.S.2d 312, 314 (2d Dep't) ("Supreme Court properly deemed the allegations admitted and sentenced the defendant as a second felony offender without holding a hearing" when "defendant was given notice of and an opportunity to controvert the allegations made in the prior felony conviction statement, admitted he was the person convicted in the prior statement, and yet failed to timely specify the allegations he sought to controvert."), <u>appeal denied</u>, 1 N.Y.3d 581, 775 N.Y.S.2d 797 (2003); <u>People</u> v. <u>Lee</u>, 251 A.D.2d 161, 161, 673 N.Y.S.2d 905, 905 (1st Dep't) ("Defendant was not entitled

to a hearing pursuant to CPL 400.21(5) since he did not controvert the allegations in the predicate

felony statement."), appeal denied, 92 N.Y.2d 983, 683 N.Y.S.2d 764 (1998).[30/]

Furthermore, Ocasio's claims that Justice Yates and/or Justice Beldock failed to

follow the procedures he alleges are required by the C.P.L. as to notifying him of his right to a

hearing (which, as noted above, is not required), Ocasio is merely alleging a violation of state

statutory law, which is not cognizable on federal habeas review.  The Supreme Court has reiterated

"many times that 'federal habeas corpus relief does not lie for errors of state law.'"  Estelle v.

McGuire, 502 U.S. 62, 67, 112 S. Ct. 475, 480 (1991).  The role of a federal habeas court is not to

"reexamine state-court determinations on state-law questions.  In conducting habeas review, a federal

---

[30/]     See also, e.g., People v. Dickerson, 202 A.D.2d 247, 247, 608 N.Y.S.2d 463, 463 (1st Dep't) ("Defendant's failure to challenge the constitutionality of a prior 1975 violent felony conviction at the time of his 1982 second violent felony offender hearing constitutes a waiver of his right to challenge the 1975 conviction at this time, even if the 1982 sentencing court did not inform defendant of his right to challenge the 1975 conviction."), appeal denied, 83 N.Y.2d 966, 616 N.Y.S.2d 19 (1994); People v. Seifert, 209 A.D.2d 555, 556, 619 N.Y.S.2d 86, 87 (2d Dep't 1994), appeal denied, 85 N.Y.2d 914, 627 N.Y.S.2d 337 (1995); People v. Harris, 199 A.D.2d 102, 103, 605 N.Y.S.2d 865, 865 (1st Dep't 1993); People v. Omaro, 197 A.D.2d 711, 712, 602 N.Y.S.2d 922, 923 (2d Dep't) ("[T]he defendant had previously been adjudicated a second violent felony offender based upon his 1979 conviction, and was, therefore, bound by that adjudication in this proceeding," where he was adjudicated a persistent felony offender), appeal denied, 82 N.Y.2d 900, 610 N.Y.S.2d 167 (1993); People v. Williams, 133 A.D.2d 871, 871-72, 520 N.Y.S.2d 424, 425 (2d Dep't 1987), appeal denied, 70 N.Y.2d 1012, 526 N.Y.S.2d 947, 521 N.E.2d 1090 (1988); People v. Evans, 123 A.D.2d 328, 328-29, 506 N.Y.S.2d 221, 223 (2d Dep't), appeal denied, 68 N.Y.2d 1000, 510 N.Y.S.2d 1032 (1986).

court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the

United States." Estelle v. McGuire, 502 U.S. at 67-68, 112 S. Ct. at 480.[31/]

Ocasio's second habeas claim should be DENIED.

**B.    Ocasio's 1994 Conviction Is Barred From Review Under the Rule of
Lackawanna v. Coss**

In Lackawanna County Dist. Attorney v. Coss, 532 U.S. 394, 121 S. Ct. 1567 (2001),

the Supreme Court held that "once a state conviction is no longer open to direct or collateral attack

in its own right because the defendant failed to pursue those remedies while they were available (or

because the defendant did so unsuccessfully), the conviction may be regarded as conclusively valid.

If that conviction is later used to enhance a criminal sentence, the defendant generally may not

challenge the enhanced sentence through a petition under § 2254 on the ground that the prior

conviction was unconstitutionally obtained." Lackawanna County Dist. Attorney v. Coss, 532 U.S.

at 403-04, 121 S. Ct. at 1574 (citation omitted);[32/] accord, e.g., Ortiz v. New York, 75 Fed. Appx.

---

[31/]    Accord, e.g., Garcia v. Rivera, 07 Civ. 2535, 2007 WL 2325928 at *13 (S.D.N.Y. Aug. 16, 2007) (Peck, M.J.); Haynesworth v. Fischer, 06 Civ. 13329, 2007 WL 2219422 at *15 (S.D.N.Y. Aug. 3, 2007) (Peck, M.J.); Harris v. Woods, 05 Civ. 5582, 2006 WL 1140888 at *36-38 & n.42 (S.D.N.Y. May 1, 2006) (Peck, M.J.) (citing cases), report & rec. adopted, 05 Civ. 5582, 2006 WL 1975990 (S.D.N.Y. July 10, 2006); Gittens v. Thomas, 02 Civ. 9435, 2003 WL 21277151 at *2 (S.D.N.Y. May 30, 2003); James v. Artuz, 97 Civ. 2792, 2000 WL 375240 at *1 (S.D.N.Y. Apr. 12, 2000), aff'd, 29 Fed. Appx. 654 (2d Cir.), cert. denied, 536 U.S. 966, 122 S. Ct. 2678 (2002); D'Amico v. Johnson, 92 Civ. 4702, 1993 WL 541658 at *1 (S.D.N.Y. Dec. 23, 1993).

[32/]    The Supreme Court in Lackawanna explained that its decision was based "on considerations relating to the need for finality of convictions and ease of administration," 532 U.S. at 402, 121 S. Ct. at 1573, and further explained:

(continued...)

14, 17 n.2 (2d Cir. 2003), cert. denied, 124 S. Ct. 2874 (2004); White v. Kapture, 42 Fed. Appx. 672,

673-74 (6th Cir. 2002); Jackson v. Miller, 260 F.3d 769, 773-74 (7th Cir. 2001), cert. denied, 535

U.S. 1038, 122 S. Ct. 1799 (2002).[33]

---

[32]        (...continued)

The first and most compelling interest is in the finality of convictions.  Once a judgment of conviction is entered in state court, it is subject to review in multiple forums.  Specifically, each State has created mechanisms for both direct appeal and state postconviction review, even though there is no constitutional mandate that they do so.  Moreover, § 2254 makes federal courts available to review state criminal proceedings for compliance with federal constitutional mandates.

As we said in Daniels, "[t]hese vehicles for review . . . are not available indefinitely and without limitation."  A defendant may choose not to seek review of his conviction within the prescribed time.  Or he may seek review and not prevail, either because he did not comply with procedural rules or because he failed to prove a constitutional violation.  In each of these situations, the defendant's conviction becomes final and the State that secured the conviction obtains a strong interest in preserving the integrity of the judgment.  Other jurisdictions acquire an interest as well, as they may then use that conviction for their own recidivist sentencing purposes, relying on "the 'presumption of regularity' that attaches to final judgments."

An additional concern is ease of administration of challenges to expired state convictions.  Federal courts sitting in habeas jurisdiction must consult state court records and transcripts to ensure that challenged convictions were obtained in a manner consistent with constitutional demands.  As time passes, and certainly once a state sentence has been served to completion, the likelihood that trial records will be retained by the local courts and will be accessible for review diminishes substantially.

Lackawanna County Dist. Attorney v. Coss, 532 U.S. at 402-03, 121 S. Ct. at 1573-74 (citations omitted).

[33]     See, e.g., O'Garro v. Ercole, 06 Civ. 3887, 2007 WL 401194 at *4 (S.D.N.Y. Feb. 5, 2007); Bryant v. Fischer, 05 Civ. 0437, 2005 WL 3418282 at *24 (S.D.N.Y. Dec. 14, 2005) (Peck, M.J.); Bellamy v. Fischer, 05 Civ. 2840, 2005 WL 1875733 at *2 (S.D.N.Y. Aug. 9, 2005); Skinner v. Duncan, 02 Civ. 0219, 2005 WL 366956 at *4 (S.D.N.Y. Feb. 17, 2005) (Peck,
(continued...)

Here, Ocasio's 1994 conviction was no longer open to direct or collateral attack, and thus could be used to enhance his sentence in the present case without challenge.

The Supreme Court in Lackawanna recognized an exception to the general rule where "the prior conviction used to enhance the sentence was obtained where there was a failure to appoint counsel in violation of the Sixth Amendment." Lackawanna County Dist. Attorney v. Coss, 532 U.S. at 404, 121 S. Ct. at 1574.[34] This exception has no applicability here, since Ocasio was represented by counsel on his 1994 conviction. (See page 8 above.)[35]

_____

[33]    (...continued)
M.J.), report & rec. adopted, 2005 WL 1633730 (S.D.N.Y. July 11, 2005); Robinson v. Perlman, 02 Civ. 9302, 2003 WL 22493499 at *2 (S.D.N.Y. Nov. 4, 2003); Hernandez v. New York, 99 Civ. 8657, 2003 WL 22127079 at *2 (S.D.N.Y. Sept. 15, 2003); Dickens v. Filion, 02 Civ. 3450, 2002 WL 31477701 at *18 (S.D.N.Y. Nov. 6, 2002) (Peck, M.J.), report & rec. adopted, 2003 WL 1621702 (S.D.N.Y. Mar. 28, 2003); Cary v. Ricks, 00 Civ. 8926, 01 Civ. 1181, 2001 WL 1035141 a *5 (S.D.N.Y. Sept. 7, 2001).

[34]    The Supreme Court explained:

> [T]he "failure to appoint counsel for an indigent [is] a unique constitutional defect . . . ris[ing] to the level of a jurisdictional defect," which therefore warrants special treatment among alleged constitutional violations. Moreover, allowing an exception for Gideon challenges does not implicate our concern about administrative ease, as the "failure to appoint counsel . . . will generally appear from the judgment roll itself, or from an accompanying minute order."

Lackawanna County Dist. Attorney v. Coss, 532 U.S. at 404, 121 S. Ct. at 1574 (citations omitted).

[35]    This exception for a Gideon-like challenge for failure to appoint counsel does not extend to a claim of ineffective assistance of counsel. See, Lackawanna County Dist. Attorney v. Coss, 532 U.S. at 400, 121 S. Ct. at 1572 (reversing Third Circuit, which had ordered resentencing on finding petitioner's counsel was ineffective during prior trial that formed the predicate sentence); see also, e.g., Davis v. Roberts, 425 F.3d 830, 835 (10th Cir. 2005) (Prisoners are
(continued...)

Accordingly, <u>Lackawanna</u>'s general rule prevents Ocasio from challenging his 1994 conviction in this habeas proceeding.  Ocasio's second habeas claim should be <u>DENIED</u> for this reason as well.

## CONCLUSION

For the reasons set forth above, Ocasio's habeas petition should be <u>DENIED</u> in its entirety, and a certificate of appealability should not be issued.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections.  <u>See also</u> Fed. R. Civ. P. 6.  Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Barbara S. Jones, 500 Pearl Street, Room 620, and to my chambers, 500 Pearl Street, Room 1370.  Any requests

---

[35]/    (...continued)
not entitled to a <u>Lackawanna</u> exception "on the ground that their counsel provided inadequate representation."); <u>Robinson</u> v. <u>Perlman</u>, 02 Civ. 9302, 2003 WL 22053452 at *7 (S.D.N.Y. Sept. 4, 2003) (petitioner's ineffective assistance of counsel claim does not fit within any <u>Lackawanna</u> exceptions), <u>report & rec. adopted</u>, 2003 WL 22493499 at *2 (S.D.N.Y. Nov. 4, 2003).

Three Justices in <u>Lackawanna</u> recognized the possibility of another exception to the general rule where (1) a state court unjustifiably refused to rule on a constitutional claim that had been properly presented to it, or (2) "[a]lternatively, after the time for direct or collateral review has expired, a defendant may obtain compelling evidence that he is actually innocent of the crime for which he was convicted, and which he could not have uncovered in a timely manner." <u>Lackawanna County Dist. Attorney</u> v. <u>Coss</u>, 532 U.S. at 405, 121 S. Ct. at 1575. Neither of these exceptions applies here.

H:\OPIN\OCASIO-Ruben

for an extension of time for filing objections must be directed to Judge Jones (with a courtesy copy to my chambers). Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993), cert. denied, 513 U.S. 822, 115 S. Ct. 86 (1994); Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir.), cert. denied, 506 U.S. 1038, 113 S. Ct. 825 (1992); Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989); Wesolek v. Canadair Ltd., 838 F.2d 55, 57-59 (2d Cir. 1988); McCarthy v. Manson, 714 F.2d 234, 237-38 (2d Cir. 1983); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated:        New York, New York
             January 8, 2008

                                    Respectfully submitted,


                                    _____
                                    **Andrew J. Peck**
                                    United States Magistrate Judge

Copies to:    Ruben Ocasio
             Leilani Rodriguez, Esq.
             Judge Barbara S. Jones